<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JESSE TURANO, et al.,**<br><br>      **Plaintiffs,**<br><br>      **v.**<br><br>**PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al.,**<br><br>      **Defendants.** | **Civil Action No. 16-2578 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on Defendants' motion to dismiss Plaintiffs' Complaint. (D.E. No. 10). The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court GRANTS Defendants' motion to dismiss.

## I. BACKGROUND

### A. Factual Allegations[1]

Plaintiffs are eight individuals who served as police officers in the Port Authority Police Department ("PAPD") at all times material to the Complaint. (D.E. No. 1, Complaint ("Compl.") ¶¶ 15-22). On March 4, 2015, PAPD issued a promotion evaluation announcement for the rank of

---

[1] The Court must accept Plaintiffs' factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

sergeant.  (*Id.* ¶ 40).[2]  The announcement stated that the written examination for the promotion would be administered on April 18, 2015.  (*Id.*).  Whereas the last two examinations for the rank of sergeant were conducted nine years apart, the 2015 examination was held only five years after the previous examination in 2010.  (*Id.* ¶ 41).  Plaintiffs note that the March 4, 2015 announcement altered or eliminated criteria that had been taken into account in previous promotional evaluations for the rank of sergeant and established a new "horizontal roster of those eligible to be considered for promotion to the rank of [s]ergeant."  (*Id.* ¶ 42).  Plaintiffs allege that these new criteria were "designed to contain arbitrary and manipulated scoring and results of the promotional exam."  (*Id.* ¶ 47).  Additionally, Plaintiffs allege that "a pattern and practice has existed and continues to exist, whereby officers were graded in an arbitrary manner, not based on merit, in a manner to benefit favored candidates, and based on political affiliation, speech and/or association."  (*Id.* ¶ 44).

Specifically, Plaintiffs allege that the March 4, 2015 promotional evaluation announcement (i) did not announce a passing grade for the written exam (*id.* ¶ 45); (ii) did not establish disciplinary or attendance requirements needed for eligibility for promotion, contrary to criteria laid out in the Memorandum of Agreement ("MOA")[3] (*id.* ¶¶ 47-48); (iii) gave PAPD discretion to engage in a random selection of candidates from the horizontal roster for review before the promotion review board, whereas prior promotional evaluation announcements mandated this

---

[2]    Plaintiffs have not submitted a copy of this promotional announcement.  In support of their motion to dismiss, Defendants submitted a Port Authority Promotional Evaluation Announcement, Bulletin No. 15-06, dated March 4, 2015 (D.E. No. 10-4), which Defendants certify is the promotional announcement referred to in the Complaint (*see* D.E. No. 10-2 at 2).

[3]    Throughout the Complaint, Plaintiffs refer to the relevant employment agreement as the "collective bargaining agreement" or "CBA."  (*See, e.g., id.* ¶¶ 47-48, 374-76).  Plaintiffs have not, however, submitted that agreement.  In support of their motion to dismiss, Defendants submitted portions of a document titled "Memorandum of Agreement January 21, 2003-Janurary 20, 2010 between Port Authority of NY & NJ and The Port Authority Police Benevolent Association, Inc."  (D.E. No. 10-3).  Defendants certify that this is the employment agreement Plaintiffs refer to in the Complaint.  (*See* D.E. No. 10-2 at 1).  Accordingly, the Court considers this document as the operative employment agreement and will refer to it as the "MOA" in this Opinion.

random selection (*id.* ¶¶ 49-51); (iv) reduced the number of promotional criteria to be considered by the promotion review board (*id.* ¶ 54); (v) indicated that "only the most competitive candidates will be *invited* to participate in the [qualifications review meetings]," whereas the 2010 promotional evaluation announcement provided that all candidates considered by the promotion review board would receive qualifications review meetings (*id.* ¶ 55 (emphasis in original)); (vi) contained internally inconsistent experience requirements for eligibility for promotion, stating alternatively that the minimum experience requirement was two years or five years (*id.* ¶ 57); and (vii) allowed PAPD to stop promoting from the horizontal roster "regardless of whether the roster had been exhausted" (*id.* ¶ 68.  Additionally, Plaintiffs allege that some officers who were eligible to take the 2015 written examination wrote testing preparation materials for this exam and thus received an unfair advantage.  (*Id.* ¶¶ 60-66).

Following the March 4, 2015 promotional evaluation announcement, approximately 700 candidates took the written examination and 171 of them passed.  (*Id.* ¶ 69).  All passing candidates, including all Plaintiffs, received qualifications review meetings.  (*Id.* ¶¶ 70-72).  Plaintiffs allege that the qualifications review meetings were conducted and rated in a manner that "was subjective, arbitrary, not based on merit, and formulated to promote whomever [PAPD] wanted." (*Id.* ¶ 78).  Specifically, Plaintiffs allege that (i) no uniform scoring systems were applied by each panel; (ii) "[the] ratings given to candidates were influenced by nepotism, cronyism, and/or unlawful practices"; (iii) Defendants knew or should have known that certain candidates had been previously provided with the questions and suggested answers for the [qualifications review meetings]"; (iv) Defendants did not provide explanations of failing ratings to seven

Plaintiffs[4] who failed the qualifications review meetings; and (v) Defendants did not recommend two Plaintiffs who passed the qualifications review meetings for promotion. (*Id.* ¶¶ 75-77).

On November 6, 2015, PAPD issued a list of fifty officers who were "highly recommended" for promotion. (*Id.* ¶ 79). On November 18, 2015, PAPD issued a new "highly recommended" list with twenty-five candidates. (*Id.* ¶ 80). Next, on December 10, 2015, PAPD issued a list of candidates who were "recommended." (*Id.* ¶ 81). Finally, on December 15, 2015, PAPD promoted at least twenty-two candidates to the rank of sergeant from the "highly recommended" list. (*Id.* ¶ 368). None of the Plaintiffs were promoted. (*Id.*)

Plaintiffs allege that PAPD "developed and maintained a pattern and practice whereby the procedure for the promotion of police officers to the rank of [s]ergeant is manipulated to achieve desired promotions." (*Id.* ¶ 358). They specifically allege that Defendants (i) "gave preference in the promotional process to those candidates who supported the preferred political candidates, were associated with the preferred political candidates, or belonged to preferred political organizations and/or associations" (*id.* ¶¶ 86, 359); (ii) "intentionally and knowingly ignored and violated" policies set forth in the promotional announcement (*id.* ¶ 360); (iii) promoted certain individuals "even though they did not adhere to the promotional guidelines and/or they used improper connections to obtain promotion" (*id.* ¶¶ 369-70); (iv) improperly disclosed examination information to officers assigned to the academy (*id.* ¶ 372); (v) promoted individuals based on "contacts [to PAPD] made by influential individuals" with political connections (*id.* ¶ 373); and (vi) violated terms of the MOA and the promotional announcement, including provisions rendering

---

[4]     Some Plaintiffs emailed Defendant Ford to inquire about their scores on the qualifications review meetings, but Ford's responses to these emails did not "address how the [qualifications review meetings] were scored or how [each] Plaintiff's [qualifications review meeting] did not meet expectations." (*See, e.g.*, *id.* ¶¶ 203, 237).

officers with major disciplinary penalties, or officers who failed to meet attendance standards, ineligible for promotion (*id.* ¶¶ 375-79).

Based on the foregoing allegations, Plaintiffs bring the following six counts: (i) violations of 42 U.S.C § 1983 by depriving Plaintiffs of their "right to hold employment without infringement of their First Amendment right to freedom of speech and association" (*id.* ¶¶ 383-90); (ii) violations of the "provision of the promotional announcement[]" such that Plaintiffs invoke an action in lieu of a prerogative writ under New Jersey Court Rule 4:69 (*id.* ¶¶ 391-97); (iii) violations of the New Jersey Civil Rights Act and the New Jersey Constitution (*id.* ¶¶ 398-407); (iv) violations of the New York Constitution (*id.* ¶ 407-15); (v) fraud by knowingly misrepresenting that "the promotional process would be consistent with the provisions set forth in the promotional announcement[]" (*see id.* ¶¶ 416-20); and (vi) estoppel based on Defendants' misrepresentation that they would follow the provisions of the promotional announcement (*see id.* ¶¶ 421-25).

### B. Procedural History

Plaintiffs filed their Complaint on May 6, 2016.  (D.E. No. 1).  Defendants moved to dismiss the Complaint on July 28, 2016.  (D.E. No. 10-1 ("Def. Mov. Br.")).  Plaintiffs opposed Defendants' motion on September 6, 2016.  (D.E. No. 16 ("Pl. Opp. Br.")).  Defendants replied on September 30, 2016.  (D.E. No. 17 ("Def. Rep. Br.")).  The matter is now ripe for resolution.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief."  That statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 545 (2007)).[5]  Although the pleading standard announced by Rule 8 does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To withstand a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  But the court is not required to accept as true "legal conclusions." *Iqbal*, 556 U.S. at 678.  And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Additionally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Indeed, on a motion to dismiss, a district court typically does not consider materials extraneous to the complaint and exhibits attached thereto; when a court does so, however, "it must convert the motion to dismiss into a motion for summary judgment . . . and provide all parties with a reasonable opportunity to present all material pertinent to the motion." *See Pero v. Int'l Bus. Machs. Corp.*, No. 12-7484, 2014 WL 37233, at *2 (Jan. 2,

---

[5]        Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

2014) (citing Fed. R. Civ. P. 12(d); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

A limited exception to conversion exists for "document[s] *integral to or explicitly relied upon in the complaint.*" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. "The rationale behind the exception is that, when a complaint refers to or relies on the document, 'the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence i[s] greatly diminished.'" *Pero*, 2014 WL 37233, at *2 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994)). When a document is "integral to or explicitly relied upon in the complaint," it forms the basis of a claim. *Jeffrey Rapaport M.D., P.A. v. Robins S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012).

"The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). "When allegations contained in a complaint are contradicted by the document it cites, the document controls." *Id.*

Finally, Federal Rule of Civil Procedure 9(b) "imposes a heightened pleading requirement concerning allegations of fraud or mistake." *Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-6272, 2015 WL 7871165, at *2 (D.N.J. Dec. 4, 2015). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff may satisfy Rule 9(b) by pleading the "date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004). "Plaintiffs also must

allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

Plaintiffs "must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud." *Jubelt v. United N. Bankers, Ltd.*, No. 13-7150, 2015 WL 3970227, at *9 (D.N.J. June 30, 2015). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 492 (D.N.J. 1998) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

## III.    DISCUSSION

### A.  Count I: First Amendment

#### 1.   The Parties' Arguments

Plaintiffs allege that Defendants violated their First Amendment rights, giving rise to a 42 U.S.C. § 1983 claim against Defendants. (Compl. ¶ 383). Specifically, they claim that Defendants "established a policy and/or custom of making promotions based on political association and/or speech and/or patronage" (*id.* ¶ 390) and took adverse employment action against Plaintiffs by not promoting them under this policy or custom (*see id.* ¶¶ 388-89).

In support of their motion, Defendants contend that Plaintiffs' First Amendment claim fails because they have not set forth factual allegations to support a violation of their rights to either freedom of association or freedom of speech. (Def. Mov. Br. at 1). As to freedom of association, Defendants argue that Plaintiffs failed to plead an actionable claim because (i) "[P]laintiffs do not

allege that they exercised[] or sought to exercise their First Amendment rights" (*id*. at 10; *see also* Def. Rep. Br. at 1-4); (ii) Plaintiffs' allegations that Defendants made promotional decisions based on individuals' associations with various governmental, community, business, or affinity groups are too vague to state a claim under *Twombly* or to establish an inference of a "discernible political preference by [Defendants]" (Def. Mov. Br. at 10-12); and (iii) Plaintiffs cannot sustain a claim on non-affiliation grounds when they have not alleged any specific political preference by Defendants that caused them not to be promoted (*see id*. at 12-13; *see also* Def. Rep. Br. at 4-5). Similarly, regarding Plaintiffs' freedom of speech, Defendants primarily argue that Plaintiffs failed to plead an actionable claim because they failed to allege that they engaged in speech that was a matter of public concern.  (Def. Mov. Br. at 13).[6]

In opposition, Plaintiffs appear to concede that they did not engage in any affirmative conduct that constitutes an exercise of their First Amendments rights.  (*See* Pl. Opp. Br. at 14-17). Instead, Plaintiffs contend that "[t]he First Amendment does not require any affirmative conduct to protect public employees, if in fact that public employer's personnel decisions are motivated by political association or speech."  (*Id*. at 14).  In support of this contention, Plaintiffs first cite case law generally supporting the proposition that the First Amendment protects the right *not* to speak or associate.  (*See id*. at 14-15).  Plaintiffs then rehash their allegations that "Defendants gave preference in the promotional process to those candidates who supported the preferred political candidates, were associated with preferred political candidates, or belonged to preferred political organizations and/or associations."  (*Id*. at 15).  Additionally, Plaintiffs discuss First Amendment case law addressing retaliation against public employees for their non-affiliation with political

---

[6]      Defendants also argue that "[g]ranting [P]laintiffs' requested relief would unquestionably disrupt the police workplace and have a detrimental impact on morale over a matter of personal as opposed to public concern."  (*Id*. at 14)

groups.  (*Id.* at 16-17).  Finally, Plaintiffs note that First Amendment association claims can be premised on the employer's incorrect perception that the employee was either unassociated or associated with a certain political figure.  (*Id.* at 17) (citing *Heffernan v. City of Paterson*, 136 S. Ct. 1412 (2016)).

## 2.  Analysis

To establish a claim under 42 U.S.C. § 1983, Plaintiffs must establish that a person acting under color of state law deprived them of a federal right.  42 U.S.C. § 1983; *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000).  Generally, the First Amendment prohibits public employers from taking adverse action against an employee because of an employee's actual or perceived engagement in constitutionally protected political activity.  *See Heffernan*, 136 S. Ct. at 1419 ("When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983.").  To sustain a First Amendment retaliation claim, a plaintiff must establish that "(i) he engaged in activity protected by the First Amendment;[7] (ii) [the] defendants retaliated in response; and (iii) [the] defendants could not rebut the claim by demonstrating that they would have taken the same action even in the absence of the protected speech."  *Ober v. Brown*, 105 F. App'x 345, 346-47 (3d Cir. 2004) (citing *Baldassare*, 250 F.3d at 194-95).

---

[7]     A court determines as a matter of law whether activity is protected by the First Amendment.  *Baldassare v. New Jersey*, 250 F.3d 188, 194-95 (3d Cir. 2001).  In making this determination, a court first considers if the speech in question involves a matter of public concern.  *Id.*  "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community."  *Id.*  If a court determines that the speech involves a matter of public concern, it next considers whether plaintiff's "interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees."  *Id.*  (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Relevant here, courts have also developed a three-part test for a plaintiff to establish a prima facie claim of discrimination based on political patronage in violation of the First Amendment: a plaintiff must show that "(i) [he] was employed at a public agency in a position that does not require political affiliation; (ii) [he] engaged in constitutionally protected conduct; and (iii) this conduct was a substantial or motivating factor in the [public employer's] employment decision." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007).  If a plaintiff establishes this prima facie claim, the public employer may "avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity."  *Id.*

Applying these principles, the Court first notes that Plaintiffs have not alleged that they engaged in any affirmative conduct that would amount to constitutionally protected activity.  (*See generally* Compl.; *see also* Pl. Opp. Br. at 16 ("The fact that Plaintiffs themselves were not politically active is irrelevant.")).  Instead, Plaintiffs' claims rest on their non-affiliation with "the preferred political candidates" or "preferred political organizations and/or associations."  (Compl. ¶ 384).  Accordingly, rather than applying the general test for a First Amendment retaliation claim, the Court assesses whether Plaintiffs have sufficiently pleaded a prima facie claim of political patronage discrimination under the three-part test laid out in *Galli*.

First, the Court finds that the position of Port Authority police sergeant does not require political affiliation.  A government position requires political affiliation when the position involves "policymaking."  *See Galli*, 490 F.3d at 271 (citing *Elrod v. Burns*, 427 U.S. 347, 367 (1976)).  However, "[n]o clear line can be drawn between policymaking and nonpolicymaking positions."  *Elrod*, 427 U.S. at 367.  The Supreme Court has instructed that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether

11

the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980). Likewise, when interpreting *Elrod* and *Branti*, the Third Circuit focused the inquiry on "whether the employee has meaningful input into decision making concerning the nature and scope of a major township program." *Brown v. Trench*, 787 F.2d 167, 169-70 (3d Cir. 1986).

Here, Plaintiffs allege that "[m]aking promotions based on political associations was not necessary for the operations of [PAPD]." (Compl. ¶ 385). And Defendants do not contend that political affiliation is an appropriate requirement for the position of police lieutenant. (*See generally* Def. Mov. Br.; Def. Rep. Br.). Additionally, the Court finds no independent reason to conclude that the position of police sergeant involves policymaking. *See Wheeler v. Twp. of Edison*, 326 F. App'x 118, 121 (3d Cir. 2009) (finding that the position of police lieutenant did not require political affiliation). Plaintiffs therefore have sufficiently pleaded the first element of a prima facie political patronage discrimination claim.

Next, the Court assesses whether Plaintiffs sufficiently alleged that they engaged in constitutionally protected conduct. As Plaintiffs point out, the Supreme Court has recognized that the First Amendment protects employees from adverse employment action premised on their non-affiliation with political groups. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 65-66, 76 (1990) (finding First Amendment violation where Republican governor took adverse employment action against governmental employees who had neither worked for nor supported the Republican Party); *Elrod,* 427 U.S. at 350-51, 371-72 (finding First Amendment violation where newly elected Democratic sheriff discharged employees "solely because they did not support and were not members of the Democratic Party and had failed to obtain the sponsorship of one of its leaders"). Indeed, under this line of cases, "there is no requirement that dismissed employees prove that they,

or other employees, have been coerced into changing, either actually or ostensibly, their political allegiance." *Branti,* 445 U.S. at 517.  Additionally, the Third Circuit has held that a political patronage discrimination claim can arise out of an employee's "failure to support the winning candidate" or "failure to engage in any political activity whatsoever." *Galli*, 490 F.3d at 272-73 (citing *Bennis v. Gable*, 823 F.2d 723, 727 n.4, 731 (3d Cir. 1987)).

Here, however, the Court finds that Plaintiffs have failed to sufficiently allege the nature of their political non-affiliation as needed to establish that they engaged in constitutionally protected conduct.  Plaintiffs' Complaint lacks any allegations that they were unaffiliated with any of the preferred political candidates, organizations, or associations, or that they were generally apolitical.  While the Court generally agrees with Plaintiffs' broad proposition that "[t]he First Amendment does not require any affirmative conduct to protect public employees" (Pl. Opp. Br. at 14), Plaintiffs still must allege sufficient factual material that—taken as true—supports the inference that their political non-affiliation amounts to constitutionally protected conduct.  In a sense, as Defendants note, Plaintiffs "allege that their fellow officers' exercise of their First Amendment rights *violated* [P]laintiffs' First Amendment rights." (Def. Mov. Br. at 10) (emphasis in original).  In other words, Plaintiffs cannot establish that they engaged in conduct protected by the First Amendment solely by identifying the political associations of other individuals who were promoted.  Although Plaintiffs need not necessarily allege that they engaged in an affirmative exercise of their First Amendment rights, they must at least allege that they chose not to support some of the "preferred political groups" or that they chose to avoid political activity altogether. *Cf. Galli*, 490 F.3d at 272 (citing *Branti*, 445 U.S. at 519) ("[T]he right not to have allegiance to the official or party in power itself is protected under the First Amendment, irrespective of whether an employee is actively affiliated with an opposing candidate or party.").  As Plaintiffs have failed

13

to plead any allegations of this sort, the Court concludes that Plaintiffs have failed to plausibly establish that they engaged in constitutionally protected conduct.

Even if Plaintiffs could meet the second prong of a prima facie political patronage discrimination claim on non-affiliation grounds, the Court finds that Plaintiffs have also failed to establish that their non-affiliation was a substantial or motivating factor in Defendants' decision not to promote them.  To establish that protected conduct (i.e., non-affiliation) was a substantial or motivating factor in an adverse employment decision, a plaintiff must allege sufficient facts to demonstrate (i) that the employer *knew* of the plaintiff's political persuasion and (ii) that this knowledge *caused* the adverse employment decision.  *See id.*  "Proof of knowledge can come from direct or circumstantial evidence."  *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 664 (3d Cir. 2002).

Here, the Court finds that Plaintiffs have failed to sufficiently plead both knowledge and causation.  Plaintiffs have neither specifically alleged that Defendants knew of their political inactivity or non-support of any of the alleged preferred groups, nor alleged facts that allow for an inference of such knowledge.  *Cf. Rutan*, 497 U.S. at 66 (finding that defendants had knowledge of applicants' political persuasions because Governor's Office of Personnel, as part of screening process, considered whether applicants had voted for, provided financial support to, or promised to join or work for the Republican Party); *Galli*, 490 F.3d at 275 (finding that inference of knowledge was supported by allegation that other employees who were nonaffiliated with Democratic Party were also discharged and replaced with individuals who supported the Democratic Party).

As to causation, Defendants argue that Plaintiffs have not sufficiently shown "how their (in)activity was *different* from what Port Authority was supporting." (Def. Rep. Br. at 2) (emphasis

in original).  The Court agrees.  In each of the cases on which Plaintiffs rely in support of their non-affiliation claim, the facts allowed for an inference of a discernible political preference by the employer.  *See, e.g.*, *Rutan*, 497 U.S at 65-66 (Republican Party); *Elrod*, 427 U.S. at 350-51 (Democratic Party); *Galli*, 490 F.3d at 268 (Democratic Party); *Aiellos v. Zisa*, No. 09-3076, 2009 WL 3424190, at *1 (D.N.J. Oct. 20, 2009) (those associated with current chief of police and captain).[8]  In contrast, the preferred political groups that Plaintiffs allege are too broad and nebulous to support an inference of an identifiable political preference by Defendants.  *Cf.  Lee v. Padilla*, No. 11-1463, 2011 WL 3475480, at *3 (D.N.J. Aug. 9, 2011) (holding that First Amendment political retaliation claim failed under *Twombly* when "the contours of [the] association were not sufficiently developed").[9]  Accordingly, the Court concludes that Plaintiffs have failed to sufficiently plead the third prong of a prima facie political patronage discrimination claim—that their conduct was a substantial or motivating factor in Defendants' decision not to promote them.

As Plaintiffs failed to sufficiently plead a prima facie claim of political patronage discrimination, the Court concludes that Plaintiffs have failed to establish that Defendants violated their First Amendment rights.  Thus, Plaintiffs cannot establish a violation of a federal right as

---

[8]      Plaintiffs quote *Aiellos* for the proposition that "no case expressly require[s] affiliation with a political party as opposed to mere political affiliation with, for example, a candidate . . . as a precondition to bringing a Section 1983 claim founded in First Amendment freedom of association rights."  (Pl. Opp. Br. at 16).  While this proposition is accurate, *Aiellos* is distinguishable from this case.  In *Aiellos*, the facts supported an inference of a discernible preference within the police department for individuals who politically supported Police Chief Zisa or his political associates.  *See* 2009 WL 3424190, at *1.  Here, the overbreadth of the preferred political associations alleged by Plaintiffs fails to support an identifiable political preference by the Defendants.

[9]      Additionally, the Court notes that Plaintiffs' reliance on *Heffernan* is misplaced.  (*See* Pl. Opp. Br. at 17).  In *Heffernan*, the plaintiff was mistakenly perceived by fellow officers to be supporting a political candidate opposing the incumbent mayor and was demoted the next day.  136 S. Ct. at 1414.  Here, Plaintiffs have not pleaded any facts for the Court to infer a causal link between any political persuasion Defendants believed Plaintiffs to have and Defendants' decision not to promote Plaintiffs.

required to sustain a § 1983 claim. *See* 42 U.S.C. § 1983. The Court therefore dismisses Count I of Plaintiffs' Complaint *without prejudice*.

### B. Counts III and IV: New Jersey and New York State Law Claims

Similar to their First Amendment claims, Plaintiffs allege that Defendants violated Plaintiffs' rights under the New Jersey Constitution and New York Constitution by promoting candidates on the basis of their preferred political associations. (*See* Compl. ¶¶ 398-415).

The parties agree that Plaintiffs' state-law claims are coextensive with their First Amendment Claims. (*See* Pl. Opp. Br. at 22-23; Def. Rep. Br. at 5). Indeed, federal courts construe claims under the New Jersey Civil Rights Act as coextensive with claims under § 1983. *See Lee*, 2011 WL 3475480 at *5 (construing claims under the New Jersey Civil Rights Act as coextensive with First Amendment claims under § 1983); *Chapman v. N.J.*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009). Likewise, "freedom of speech claims are subject to the same analysis under the federal and New York State Constitutions." *Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*, 992 F. Supp. 2d 102, 129 (N.D.N.Y. 2014).

Accordingly, for the reasons discussed in Section III.A *supra*, the Court finds that Plaintiffs have failed to sufficiently plead any violations of their rights to freedom of speech or association in support of these state-law claims.[10] The Court dismisses Counts III and IV of the Complaint *without prejudice*.

---

[10] Plaintiffs also allege that Defendants violated Article 7, § 1 of the New Jersey Constitution, which provides that civil service employees will be promoted according to merit and fitness. (Compl. ¶ 1). Defendants argue that the merit and fitness clause does not apply here. (*See* Def. Mov. Br. at 18-19). Plaintiffs' opposition does not address or refute Defendants' contention. (*See generally* Pl. Opp. Br.). Accordingly, to the extent Plaintiffs allege that Defendants violated the merit and fitness clause of the New Jersey Constitution, the Court deems this claim waived.

### C.  Count II: Action in Lieu of a Prerogative Writ

#### 1.  The Parties' Arguments

Plaintiffs seek to bring an action in lieu of a prerogative writ pursuant to New Jersey Court Rule 4:69 on the grounds that Defendants "violated the provisions of the promotional announcements" and "established a policy and/or custom of making promotions based on criteria other than that which was set forth in the promotional announcement[]and policies."  (Compl. ¶¶ 394-97).  Defendants argue that Plaintiffs are unable to maintain an action in lieu of a prerogative writ because (i) Plaintiffs failed to exhaust administrative remedies as required by New Jersey Court Rule 4:69-5 (Def. Mov. Br. at 16-17; Def. Rep. Br. at 6-7); (ii) personnel decisions are not actionable under New Jersey Court Rule 4:69 (Def. Mov. Br. at 17); and (iii) the action is time-barred since Plaintiffs failed to bring the action within forty-five days as required by New Jersey Court Rule 4:69-6(a) (Def. Rep. Br. at 7-8).  In response, Plaintiffs contend that (i) the action is not time-barred because PAPD continues to make promotions to this day; (ii) the forty-five-day rule may be relaxed "in the interests of justice"; and (iii) "Plaintiffs did not have any legitimate means of exhausting administrative remedies."  (Pl. Opp. Br. at 21).

#### 2.  Analysis

"[New Jersey] courts, from an early date, have lent the aid of the appropriate prerogative writ to private persons seeking to remedy wrongful acts of public officials when the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights and the public convenience will be subserved thereby."  *Schwartz v. Essex Cty. Bd. of Taxation*, 28 A.2d 482, 483-84 (N.J. 1942), *aff'd*, 32 A.2d 354 (N.J. 1943).  An action in lieu of a prerogative writ "permits a court to set aside a municipal board decision if it is shown to be arbitrary, capricious or unreasonable, not supported in the evidence, or otherwise contrary to law."  *Nat'l Amusements Inc.*

*v. Borough of Palmyra*, 716 F.3d 57, 63 (3d Cir. 2013) (quoting *Rivkin v. Dover Twp. Rent Leveling Bd.*, 671 A.2d 567, 580-81 (N.J. 1996)).  New Jersey Court Rule 4:69-6 provides the framework for bringing an action in lieu of a prerogative writ: the action must be brought no "later than 45 days after the accrual of the right to the review, hearing or relief claimed," and some types of municipal actions are prohibited from challenges though an action in lieu of a prerogative writ.

First, contrary to Defendants' assertion, personnel decisions of municipalities appear actionable under New Jersey Court Rule 4:69-6, as none of the exceptions in paragraph (b) of the Rule apply to personnel decisions.  *See Wheeler*, 326 F. App'x at 124-25 ("None of the municipal acts cited in paragraph (b) of the rule covers personnel decisions of municipalities.  Therefore, [the plaintiff] could have filed an action in lieu of prerogative writs to challenge the promotions of Lieutenants Shannon and Marcantuono . . . .").

Nonetheless, as Defendants correctly assert, a plaintiff must exhaust administrative remedies before bringing an action in lieu of a prerogative writ.  *See* N.J. Ct. R. 4:69-5 ("Except where it is manifest that the interest of justice requires otherwise, actions under R. 4:69 shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted.").  Here, the Court finds that Plaintiffs have failed to exhaust the administrative remedies provided by the MOA.  In a previous similar action, this Court addressed the argument that candidates for promotion to sergeant had no means of exhausting administrative remedies.  *See Otero v. Port Auth. of N.Y.*, No. 14-1655, 2016 WL 1260682, at *4-5 (D.N.J. Mar. 31, 2016).[11]  That decision notes that paragraph VI of Appendix J of the MOA provides for a remedial procedure that is available to challenge aspects of the sergeant's promotional procedure.

---

[11]     The Court notes that it addressed this argument—i.e., the failure to exhaust administrative remedies provided in the MOA—in the context of analyzing a breach-of-contract claim.  *See id.*  The same analysis, however, applies to all claims whose elements require exhaustion of administrative remedies.  The Court therefore cautions Plaintiffs to exhaust all proper administrative remedies before including such claims in any future pleading.

*See id.*  Paragraph VI MOA provides, "[a] charge that the Port Authority has violated a procedural matter in this Police Sergeant Promotion Evaluation Procedure shall be submitted to the Port Authority Employment Relations Panel for an expedited determination." (MOA at 162).  Plaintiffs appear to avoid this provision of the MOA when arguing that they have not failed to exhaust administrative remedies.  Accordingly, the Court concludes that this provision provides Plaintiffs with an administrative forum to address their complaints about the promotional process.[12]  Thus, the Court finds that Plaintiffs are barred from bringing an action in lieu of a prerogative writ because they have failed to exhaust the available administrative remedies under the MOA.  *See* N.J. Ct. R.  46:9-5.[13]  The Court dismisses Count II of the Complaint *without prejudice*.

### D.  Count V: Fraud

#### 1.  The Parties' Arguments

Plaintiffs allege that Defendants committed fraud based on (i) Defendants' representations to Plaintiffs that the sergeant's promotional process would be consistent with the provisions set forth in the promotional announcement; (ii) Defendants' knowledge that the sergeant's promotional process would not be conducted in a manner consistent with the promotional announcement; and (iii) Plaintiffs' reliance on these representations, including spending time and money preparing for the promotional exam.  (Compl. ¶¶ 417-20).  Defendants argue that these allegations fail to meet the heightened pleading standard required by Rule 9(b).  (*See* Def. Mov. Br. at 20).   Specifically, Defendants argue that (i) Plaintiffs have not detailed "who made the

---

[12]    To the extent that Plaintiffs construe their attempts to uncover their interview scores as exhausting administrative remedies (*see* Pl. Opp. Br. at 28), the Court concludes that such actions do not constitute Plaintiffs availing themselves of an administrative remedy.

[13]    Because the Court concludes that Plaintiffs cannot maintain an action in lieu of a prerogative writ in light of their failure to exhaust administrative remedies, the Court need not address whether Plaintiffs should be provided with an enlargement to the forty-five day rule in "the interest of justice."  *See* N.J. Ct. R. 46:9-5.

representations, what they said, and when they said it" (*id.* at 21; *see also* Def. Rep. Br. at 8); (ii) Plaintiffs have not sufficiently pleaded any resulting damages from the alleged fraud (Def. Mov. Br. at 21); and (iii) Plaintiffs "fail to state how changes to the [sergeant's promotional] process, which are within [PAPD's] discretion to make as per the MOA, constitute[] fraud" (Def. Rep. Br. at 9).

In response, Plaintiffs contend that they "have specifically and particularly pled a series of false and misleading claims by [PAPD], including the specific documents where these claims were made, the dates of these documents, [and] the the [sic] individuals to whom these documents were distributed." (Pl. Opp. Br. at 20). Plaintiffs allege that

> Despite its promulgation of the policy procedure set forth in the various promotional announcements and postings, [PAPD] intentionally and knowingly ignored and violated said policies as part of a "bait and switch" tactic of setting out policies and criteria, selectively enforcing said policy, and then changing the policy when it did not further their interests.

(*Id.* at 19). Plaintiffs further argue that Defendants committed fraud by (i) "eliminat[ing] prior eligibility requirements, including disciplinary requirements that are mandated under the [MOA]"; (ii) deny[ing] officers qualifications review meetings, even if they met all requirements for promotion to sergeant; (iii) conducting qualifications review meetings "in a manner to promote those improperly preferred by [PAPD]"; (iv) allowing examination materials to be written by candidates who would take the examination; (v) "permitt[ing] officers to be promoted even though they did not meet the qualifications"; (vi) allowing promotions to cease "for any reason whatsoever, even if officers remained on the eligibility list"; (vii) promoting officers "who did not meet the promotional qualifications and in fact who walked out of the exam"; (viii) "ma[king] promotions based on officers' affiliations with political figures, organizations, and associations"; and (ix) hiding exam scores from candidates "in order to hide the above fraud." (*Id.* at 19-20).

20

### 2.  Analysis

"To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367-68 (N.J. 1997)).  Additionally, as discussed in Section II *supra*, a plaintiff alleging fraud must adhere to Rule 9(b)'s heightened pleading standard and therefore must provide some "means of injecting precision and some measure of substantiation into their allegations of fraud."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

Assuming that Plaintiffs can establish the first two elements of a fraud claim, the Court finds that Plaintiffs have not pleaded sufficient facts for the Court to infer the next required element—Defendants' intention that Plaintiffs rely on the alleged misrepresentation.  The Complaint contains only conclusory statements that Defendants "knew that the policies and procedures set forth with regard to promotions to the rank of [s]ergeant were false, intended to mislead and fraudulent" and that "Defendants expected and/or intended that Plaintiffs would act upon these misrepresentations." (Compl. ¶¶ 360, 423).  Plaintiffs' conclusory assertions, however, are insufficient to meet the heightened pleading standard of Rule 9(b).  Even considering Rule 9(b)'s allowance for general allegations as to intent, "formulaic recitation of the elements" is not entitled to the presumption of truth.  *Kaminski v. Twp. of Toms River*, No. 10-2883, 2011 WL 2600920, at *4 (D.N.J. June 29, 2011) (quoting *Iqbal,* 556 U.S. at 681).  Here, Plaintiffs have provided no more than conclusory allegations as to intent and therefore have failed to sufficiently

allege the third element of fraud.  Accordingly, the Court dismisses Count V of the Complaint *without prejudice.*[14]

### E.  Count VI: Estoppel

#### 1.  The Parties' Arguments

Plaintiffs bring an estoppel claim based on similar allegations as their fraud claim—namely that (i) Defendants misrepresented or concealed that they would not be following the provisions set forth in the promotional announcements; (ii) Defendants expected or intended that Plaintiffs rely on these misrepresentations; and (iii) Plaintiffs spent time and money preparing for the promotional exam in reliance on these representations.  (Compl. ¶ 422-24).

Defendants contend that Plaintiffs have failed to establish the elements necessary to invoke promissory estoppel because (i) "[P]laintiffs have failed to state the alleged promise that [D]efendants communicated to them"; (ii) Defendants had no reason to expect that the promotional announcement would induce Plaintiffs to spend personal funds in preparation for the examination; and (iii) Defendants did not actually induce any action by Plaintiffs.  (Def. Mov. Br. at 22-23).

In opposition, Plaintiffs briefly reiterate their allegations of misrepresentations by Defendants and maintain that the estoppel claim is actionable.  (Pl. Opp. Br. at 23-24).

#### 2.  Analysis

Under New Jersey law, a plaintiff must establish the following elements to maintain a claim of promissory estoppel: "(1) a clear and definite promise; (2) made with the expectations that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (citing *Toll Bros. v. Bd. of Chosen*

---

[14]     Because the Court dismisses Count V on the grounds that Plaintiffs have not set forth sufficient facts to infer the requisite element of intent, it need not address whether Plaintiffs have sufficiently pleaded the remaining elements of a fraud claim.

*Freeholders*, 944 A.2d 1, 19 (N.J. 2008)).   The "clear and definite promise" requirement is considered the "*sine qua non* for applicability of this theory of recovery."   *Watson v. City of Salem*, 934 F. Supp. 643, 661 (D.N.J. 1995) (quoting *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 395 A.2d 222 (N.J. Super. App. Div. 1978), *certif. denied*, 401 A.2d 243 (N.J. 1979)).   Accordingly, indefinite promises or promises subject to change by the promisor are not "clear and definite" and cannot give rise to a claim for promissory estoppel.   *Aircraft Inventory Corp. v. Falcon Jet Corp.*, 18 F. Supp. 2d 409, 416 (D.N.J. 1998).

Here, the Court finds that Plaintiffs have failed to allege any clear and definite promise made to them by Defendants.   First, under Count VI, Plaintiffs allege that "Defendants misrepresented and/or concealed to Plaintiffs they would not be following the provisions set forth in the promotional announcement."   (Compl. ¶ 422).   This allegation (and the Complaint as a whole) fails to indicate any distinct promise that Defendants made to Plaintiffs.   *Cf.  Automated Salvage Transp., Inc. v. NV Koninklijke KNP BT*, 106 F. Supp. 2d 606, 622 (D.N.J. 1999) ("Plaintiffs point to no "clear and definite promise" made by [defendant].  Instead, plaintiffs point to many alleged misrepresentations made by [defendant]. They fail, however, to single out a concrete promise.").   Additionally, while the written provisions in the March 4, 2015 promotional announcement provides general criteria and procedures for the promotional process for the rank of sergeant, these provisions do not evince a definite promise made to Plaintiff.   Indeed, as noted earlier, the promotional announcement contains an express provision that "[t]he Port Authority of NY & NJ reserves the right to update, modify or change the Selection and Appointment Process identified above" (D.E. No. 10-4 at 4)—further underscoring that this announcement does not contain clear and definite promises.   *See Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 575

(D.N.J. 2002) ("[T]his indefinite proposal, subject to modification or withdrawal at [defendant's] sole discretion, cannot form the basis of a promissory estoppel claim.").

For these reasons, the Court concludes that Plaintiffs have failed to adequately allege a clear and definite promise made by Defendants that gives rise to a claim of promissory estoppel.[15] Accordingly, the Court dismisses Count VI of the Complaint *without prejudice*.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss.  Plaintiffs' Complaint is dismissed in its entirety *without prejudice* to their right to file an amended complaint. An appropriate Order follows this Opinion.

<u>s/Esther Salas</u>
**Esther Salas, U.S.D.J.**

---

[15]    As the Court concludes that Plaintiffs have failed to set forth the first element of promissory estoppel, it need not consider if Plaintiffs have sufficiently set forth the remaining elements.