UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSE TURANO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al., <br><br> Defendants. | Civil Action No. 16-2578 (ES) (JAD) <br><br> MEMORANDUM |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on Defendants' motion to dismiss Plaintiffs' Amended Complaint (D.E. No. 24 ("AC")). (D.E. No. 29). The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court DENIES Defendants' motion to dismiss.

***Factual and Procedural Background.***[1] Plaintiffs initiated this action on May 6, 2016. (D.E. No. 1). In their original Complaint, Plaintiffs alleged (i) violations of 42 U.S.C § 1983 by depriving Plaintiffs of their "right to hold employment without infringement of their First Amendment right to freedom of speech and association" (*id.* ¶¶ 383-90); (ii) violations of the "provision of the promotional announcement[]" such that Plaintiffs invoke an action in lieu of a prerogative writ under New Jersey Court Rule 4:69 (*id.* ¶¶ 391-97); (iii) violations of the New Jersey Civil Rights Act and the New Jersey Constitution (*id.* ¶¶ 398-407); (iv) violations of the

---

[1] The Court must accept Plaintiff's factual allegations as true for purposes of resolving Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012) ("As such, we set out facts as they appear in the Complaint and its exhibits.").

New York Constitution (*id.* ¶ 407-15); (v) fraud by knowingly misrepresenting that "the promotional process would be consistent with the provisions set forth in the promotional announcement[]" (*see id.* ¶¶ 416-20); and (vi) estoppel based on Defendants' misrepresentation that they would follow the provisions of the promotional announcement (*see id.* ¶¶ 421-25).

Defendants moved to dismiss the original Complaint on July 28, 2016. (D.E. No. 10). Plaintiffs opposed Defendants' motion on September 6, 2016. (D.E. No. 16). Defendants replied on September 30, 2016. (D.E. No. 17). On March 31, 2017, this Court granted Defendants' motion and dismissed Plaintiffs' claims without prejudice to Plaintiffs' right to file an amended complaint. (D.E. No. 21 ("March 2017 Opinion"); D.E. No. 22 ("March 2017 Order")).

On April 27, 2017, Plaintiffs filed an Amended Complaint alleging (i) violations of 42 U.S.C § 1983 by depriving Plaintiffs of their "right to hold employment without infringement of his First Amendment right to freedom of speech and association" (Count I) (AC ¶¶ 393-401); (ii) violations of the New Jersey Civil Rights Act ("NJCRA") and the New Jersey Constitution (Count II) (*see id.* ¶¶ 402-10); (iii) violations of the New York Constitution (Count III) (*see id.* ¶¶ 411-19); and (iv) fraud by knowingly misrepresenting that "the promotional process would be consistent with the provisions set forth in the promotional announcements" (Count IV) (*see id.* ¶¶ 420-25).

Defendants moved to dismiss the Amended Complaint on June 19, 2017. (D.E. No. 29-4 ("Defs. Mov. Br.")). Plaintiffs opposed Defendants' motion on July 21, 2017. (D.E. No. 31-1 ("Pls. Opp. Br.")). And Defendants submitted a reply in further support of their motion on July 31, 2017. (D.E. No. 32 ("Defs. Reply Br.")). The matter is now ripe for resolution.

In its March 2017 Opinion, the Court provided a detailed overview of the factual background and procedural history of this matter. (*See* March 2017 Opinion at 1-5). Therefore,

the Court writes primarily for the parties and assumes familiarity with the underlying factual and procedural history. *See Schindler Elevator Corp. v. Otis Elevator Co.*, No. 09-0560, 2010 WL 4687746, at *1 (D.N.J. Nov. 10, 2010).[2] Specifically, the Court will evaluate whether Plaintiffs have cured the deficiencies addressed in the Court's March 2017 Opinion.

*Legal Standard.* Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." That statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although the pleading standard announced by Rule 8 does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To withstand a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action,

---

[2]  Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

3

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Additionally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Finally, Federal Rule of Civil Procedure 9(b) "imposes a heightened pleading requirement concerning allegations of fraud or mistake." *Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-6272, 2015 WL 7871165, at *2 (D.N.J. Dec. 4, 2015). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff may satisfy Rule 9(b) by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

***Count I: First Amendment Claim.*** To establish a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him or her of a federal right. 42 U.S.C. § 1983; *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Generally, the First Amendment prohibits public employers from taking adverse action against an employee because of an employee's actual or perceived engagement in constitutionally protected political activity. *See Heffernan*, 136 S. Ct. at 1419 ("When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983."). To sustain a First Amendment retaliation claim, a plaintiff must establish

4

that "(i) [the plaintiff] engaged in activity protected by the First Amendment;[3] (ii) [the] defendants retaliated in response; and (iii) [the] defendants could not rebut the claim by demonstrating that they would have taken the same action even in the absence of the protected speech." *Ober v. Brown*, 105 F. App'x 345, 346-47 (3d Cir. 2004) (citing *Baldassare*, 250 F.3d at 194-95).

Relevant here, courts have also developed a three-part test for a plaintiff to establish a prima facie claim of discrimination based on political patronage in violation of the First Amendment: a plaintiff must show that "(i) [the plaintiff] was employed at a public agency in a position that does not require political affiliation; (ii) [the plaintiff] engaged in constitutionally protected conduct; and (iii) this conduct was a substantial or motivating factor in the [public employer's] employment decision." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). If a plaintiff establishes this prima facie claim, the public employer may "avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Id.*

In the March 2017 Opinion, this Court concluded that Plaintiffs failed to establish that Defendants violated their First Amendment rights because they failed to sufficiently plead a prima facie claim of political patronage. (March 2017 Opinion at 15-16).[4] The Court reasoned that Plaintiffs failed to sufficiently (i) allege the nature of their political non-affiliation as needed to establish that they engaged in constitutionally protected conduct because "Plaintiffs' Complaint lacks any allegations that they were unaffiliated with any of the preferred political candidates,

---

[3] A court determines as a matter of law whether activity is protected by the First Amendment. *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001).

[4] For the reasons stated in the Court's March 2017 Opinion, the Court finds that the position of Port Authority police sergeant does not require political affiliation and Plaintiffs therefore have sufficiently pleaded the first element of a prima facie political patronage claim. (March 2017 Opinion at 11-12).

organizations, or associations, or that they were generally apolitical" (*id.* at 12-13); (ii) "plead both knowledge and causation. Plaintiffs have neither specifically alleged that Defendants knew of their political inactivity or non-support of any of the alleged preferred groups, nor alleged facts that allow for an inference of such knowledge" (*id.* at 14); and (iii) "plead the third prong of a prima facie political discrimination claim—that their conduct was a substantial or motivating factor in Defendants' decision not to promote them" (*id.* at 15).

The Court finds that Plaintiffs' Amended Complaint has cured those deficiencies. (*See, e.g.*, AC ¶¶ 44, 352-67). Plaintiffs now allege, for example, that:

- "A pattern and practice has existed and continues to exist, whereby officers were graded in the exam in an arbitrary manner, not based on merit, in a manner to benefit favored candidates, and based on the political affiliation and/or associations of those candidates who had political connections with political candidates, organizations, unions, elected officials in New York or New Jersey, politically appointed Port Authority officials and/or other individuals who were politically appointed in New York and New Jersey. That included but was not limited to associations with a former governor of New York, a New Jersey senator, heads of local civil organizations, politically-appointed members of the Port Authority Board of Commissioners, unions, and other quasi-political organizations, as well as race and religious based organizations."

- "As discussed herein, various individuals were promoted based on political connections and/or affiliations with other organizations."

- "Defendants gave preference in the promotional process to those candidates who supported or were associated with preferred political candidates, political organizations, unions, elected officials in New York or New Jersey, appointed Port Authority officials and/or political appointments in New York or New Jersey. As set forth below, that included but was not limited to associations with a former governor of New York, a New Jersey senator, heads of local civil organizations, politically-appointed members of the Port Authority Board of Commissioners, unions, and other quasi-political organizations, as well as race and religious based organizations."

- "As a direct result, Plaintiffs were not promoted, since none of the Plaintiffs were politically affiliated or perceived as such."

- "Plaintiffs were actually and/or were perceived as being apolitical and/or not sufficiently supportive of the preferred political candidates and/or organizations."

- "Plaintiffs were perceived by the Defendants as not supporting and/or not being sufficiently supportive of favored political candidates and organizations."

6

- "Defendants based promotional decisions on whether candidates were sufficiently supportive of favored political candidates and/or political organizations. Whether an officer was sufficiently supportive was a motivating factor in making promotions."
- "The preference given to those who supported and/or were perceived as supporting the aforementioned political candidates directly caused the promotion of certain candidates over others, including [P]laintiffs."
- "Making promotions based on political association was not necessary for the operations of the Port Authority."
- "Promotions based on political affiliations or support constitute an impermissible infringement on the right to free expression of public employees, including the Plaintiffs."

(*Id.*). Accepting Plaintiffs' allegations as true and giving Plaintiffs "the benefit of every favorable inference to be drawn therefrom," *Malleus*, 641 F.3d at 563, the Court finds that Plaintiffs have "state[d] a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss Count I of Plaintiffs' Amended Complaint is denied.[5]

***Counts II and III: New Jersey and New York State Law Claims.*** The parties agree that Plaintiffs' state-law claims (Counts II and III) are coextensive with their First Amendment claims. (Defs. Mov. Br. at 19-21; Pl. Opp. Br. at 24-25). Indeed, federal courts construe claims under the New Jersey Civil Rights Act as coextensive with claims under § 1983. *See Lee v. Padilla*, No. 11-1463, 2011 WL 3475480, at *5 (D.N.J Aug. 9, 2011) (construing claims under the New Jersey Civil Rights Act as coextensive with First Amendment claims under § 1983); *Chapman v. N.J.*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009). Likewise, "freedom of speech claims are subject to the same analysis under the federal and New York State Constitutions."

---

[5] The Court recognizes Defendants' argument that "[t]he sheer overbreadth and vagueness of these factual allegations, coupled with the lack of a protected right, cannot give rise to a First Amendment claim." (Defs. Mov. Br. at 14). But when reviewing a motion to dismiss, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus*, 641 F.3d at 563. And Plaintiffs' allegations in the Amended Complaint—accepted as true and drawing all inferences in Plaintiffs' favor—satisfy Plaintiffs' burden of "stat[ing] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. So, while Plaintiffs' allegations indeed may be overinclusive, the Court notes that the "plausibility standard is not akin to a 'probability requirement.'" *Id.* Given the liberal pleading standard here, Defendants' argument is unpersuasive at this stage of the litigation. *See Roberts v. Harvey*, No. 03-5181, 2007 WL 1101438, at *1 (D.N.J. Apr. 10, 2007) (noting the "liberal notice pleading standards of the Federal Rules of Civil Procedure"); *The PRC Grp. v. Indivero*, No. 04-4693, 2005 WL 1522583, at *1 (D.N.J. June 27, 2005) (noting the "liberal motion to dismiss standard").

*Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*, 992 F. Supp. 2d 102, 129 (N.D.N.Y. 2014). Accordingly, for the reasons discussed above (*see supra* at 4-7), the Court finds that Defendants' motion to dismiss Counts II and III of Plaintiffs' Amended Complaint is denied.

*Count IV: Fraud.* "To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367-68 (N.J. 1997)). Additionally, a plaintiff alleging fraud must adhere to Rule 9(b)'s heightened pleading standard and therefore must provide some "means of injecting precision and some measure of substantiation into their allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

The Court previously dismissed Plaintiffs' fraud claim:

> Assuming that Plaintiffs can establish the first two elements of a fraud claim, the Court finds that Plaintiffs have not pleaded sufficient facts for the Court to infer the next required element—Defendants' intention that Plaintiffs rely on the alleged misrepresentation. The Complaint contains only conclusory statements that Defendants "knew that the policies and procedures set forth with regard to promotions to the rank of [s]ergeant were false, intended to mislead and fraudulent" and that "Defendants expected and/or intended that Plaintiffs would act upon these misrepresentations." (Compl. ¶¶ 360, 423). Plaintiffs' conclusory assertions, however, are insufficient to meet the heightened pleading standard of Rule 9(b). Even considering Rule 9(b)'s allowance for general allegations as to intent, "formulaic recitation of the elements" is not entitled to the presumption of truth. *Kaminski v. Twp. of Toms River*, No. 10-2883, 2011 WL 2600920, at *4 (D.N.J. June 29, 2011) (quoting *Iqbal,* 556 U.S. at 681). Here, Plaintiffs have provided no more than conclusory allegations as to intent and therefore have failed to sufficiently allege the third element of fraud. Accordingly, the Court dismisses Count V of the Complaint *without prejudice.*

(March 2017 Opinion at 21-22). In their Amended Complaint, however, Plaintiffs have added several factual allegations that cure the deficiency previously noted by the Court. (*See, e.g.*, AC

8

¶¶ 45, 51-53, 58-59, 82, 358-70, 374, 380-81; *see also* Pls. Opp. Br. at 21-24). Plaintiffs allege, for example, that:

- "Defendants intended to mislead candidates, including the plaintiff, by issuing a promotional announcement – which candidates would believe would be followed and also applied in a good faith manner. In reality, as set forth below, Defendants intended to not follow the promotional policies and to also manipulate them in a manner designed to promote preferred candidates, who had political affiliation and/or association with political candidates, organizations, unions, elected officials in New York or New Jersey, politically appointed Port Authority officials and/or other individuals who were politically appointed in New York and New Jersey, rather than engaging in a fair, good faith effort to promote the best candidates."

- "What was once a mandated random selection process – with oversight by the inspector general – is now completely at the discretion of the Port Authority, and presumably Defendant Fedorko, to promote whomever he wants without regard to the seniority and/or qualifications and/or written exam ratings of the candidates. The written exam is the only objective portion of the examination process."

- "This was changed to further enable the Port Authority to promote officers who are affiliated with the political figures and/or political organizations set forth in paragraph 44, and as set forth herein."

- "This promotional system and exam was intended to mislead candidates to believing that an Inspector General selection may in fact occur, when in reality the Defendants had no intention of utilizing this process, because Defendants instead based promotions on who possessed political association and connections, which benefitted those politically-connected candidates in the selection process."

- "This was intended to mislead candidates to believing that QRM selection would be provided evenly and based on merit, when in reality the Defendants had no intention of utilizing this process in such a manner, and instead was done to deny QRM's when they wanted to and provide QRM's whenever it wanted."

- "In reality, this was pretext that favored those candidates who were politically connected or affiliated with political candidates, organizations, unions, elected officials in New York or New Jersey, appointed Port Authority officials and/or political appointments in New York or New Jersey. That included but was not limited to associations with a former governor of New York, a New Jersey senator, heads of local civil organizations, politically-appointed members of the Port Authority Board of Commissioners, unions, and other quasi-political organizations, as well as race and religious based organizations."

- "The QRM process was intended to mislead candidates to believing that it would be applied evenly and in good faith based on merit, when in reality the Defendants intended to use the QRM process to promote and deny promotion to whomever it wanted."

- "Defendants based promotional decisions on whether candidates were sufficiently supportive of favored political candidates and/or political organizations. Whether an officer was sufficiently supportive was a motivating factor in making promotions."

9

- "The Port Authority Police Department developed and maintained a pattern and practice whereby the procedure for promotion of police officers to the rank of Sergeant is manipulated to achieve desired promotions."

- "Despite its promulgation of the policy procedure set forth in the various promotional announcements and postings, upon information and belief, the Port Authority has intentionally and knowingly ignored and violated said policies. Upon information and belief, the defendants knew that the policies and procedures set forth with regard to promotions to the rank of Sergeant were false, intended to mislead and fraudulent."

- "Rather, the promotional policies were adopted as pretext with the intention to mislead the candidates, including Plaintiffs, into believing that the promotional process would occur in a good faith manner based on merit."

- "Upon information and belief, certain individuals who were promoted did so even though they did not adhere to the promotional guidelines and/or they used improper connections to obtain promotion. Rather, the Port Authority's decisions were tainted by cronyism and nepotism, and not on merit."

- "This includes Officer Albin, the former Port Authority Police Chief's son, and officer Clyburn, who worked in the academy and who prematurely walked out of the QRM yet was still highly recommended. Like the 2010 exam, the officers promoted were disproportionately from the academy. Moreover, officers Gonzalez and Perez were Fedorko's driver and were promoted, just like in 2011 when Fedorko's drivers Masouridis and Cocodrilli were improperly promoted. Further, Officer Lisa Orlando was promoted, even though she was in the academy and wrote portions of the prep materials for the exam."

(AC ¶¶ 45, 51-53, 58-59, 82, 358-70, 374, 380-81). Accepting Plaintiffs' allegations as true and giving Plaintiffs "the benefit of every favorable inference to be drawn therefrom," *Malleus*, 641 F.3d at 563, the Court again finds that Plaintiffs have "state[d] a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss Count IV of Plaintiffs' Amended Complaint is denied.

***Conclusion.*** For the reasons above, the Court DENIES Defendants' motion to dismiss. An appropriate Order accompanies this Memorandum.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**